UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND WEINUS,                    :
                                   :
          Plaintiff               :     No. 1:14-CV-00438
                                   :
     vs.                           :     (Judge Kane)
                                   :
CAROLYN W. COLVIN, ACTING          :
COMMISSIONER OF SOCIAL             :
SECURITY,                          :
                                   :
          Defendant               :

<u>MEMORANDUM</u>

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Raymond Weinus's claim for disability insurance benefits and supplemental security income benefits.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Weinus met the insured status requirements of the Social Security Act through December 31, 2008. Tr. 83, 85, 152 and 154.[1] In order to establish entitlement to disability insurance benefits Weinus was required to establish that he suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A),

---

1. References to "Tr.___" are to pages of the administrative record filed by the Defendant on June 5, 2014.

(c)(1)(B); 20 C.F.R. §404.131(a)(2008); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or other disabled individuals who have little or no income.  Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits.

Weinus alleged that he became disabled on December 30, 2007, because of the pain, both localized and radicular, associated with herniated discs in the cervical and lumbar spine. Tr. 41, 103 and 180.  Weinus reported that his pain was constant and wide-spread, from his neck to his legs. Tr. 57-58, 60 and 66. He further alleged that he was constantly dropping items because of weakness in his hands and arms and that he sometimes uses a cane to ambulate. Id.

Weinus claimed that he was presumptively disabled under the Social Security Administration's Listings of Impairments set forth in the Code of Federal Regulations, specifically Listing 1.04, Disorders of the Spine. Tr. 10; Doc. 11, Plaintiff's Brief, p. 4.

The requirements of Listing 1.04 are as follows:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  **With:**

A. Evidence of nerve root compression characterized

2

by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudica-tion, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., pt. 404, subpt. P, app. 1, § 1.04.  The inability to ambulate effectively is defined as follows:

Inability to ambulate effectively means an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of handheld assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., pt. 404, subpt. P, app. 1, § 1.00B2b. Although asserting that he met the requirements of Listing 1.04, Weinus did not delineate the medical findings required for each subsection of the listing.

In the present appeal,[2] Weinus argues that the Commissioner erred by (1) failing to find that he met Listing 1.04, (2) failing to give appropriate weight to the opinion of a treating physician as well as the opinion of a physician who examined him on behalf of the Bureau of Disability Determination,[3] (3) failing to properly evaluate his credibility, and (4) finding that he had the residual functional capacity to perform sedentary work.

For the reasons that follow, the Court will remand the case to the Commissioner for further proceedings.

I.  **BACKGROUND**

On May 27, 2010, Weinus filed protectively[4] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 16, 138-151 and 175. Weinus's applications were initially denied by the Bureau of Disability Determination on August 19, 2010. Tr. 103-107 and 115-

---

2.  Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

3.  The Bureau of Disability Determination is a state agency which initially evaluates applications for disability insurance and supplemental security income benefits on behalf of the Social Security Administration.  Tr. 104 and 116.

4.  Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits.  A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

119.   On October 5, 2010, Weinus requested a hearing before an administrative law judge ("ALJ") which was held on April 19, 2012. Tr. 16 and 33-78.  Weinus was represented by counsel at the hearing. Id.  At the hearing the ALJ raised the issue as to whether or not Weinus's claim for disability insurance benefits was properly before her because Weinus's date last insured was December 31, 2008, and there was a prior application filed by Weinus for disability insurance benefits which was denied on April 15, 2010. Tr. 36 and 82-92.

On June 11, 2012, the ALJ issued two decisions.  First, the ALJ dismissed Weinus's request for hearing with respect to his claim for disability insurance benefits. Tr. 16-17.  The ALJ stated in relevant part as follows:

> The record shows that claimant previously filed an application for a period of disability and disability insurance benefits that was denied in a decision dated April 15, 2010. (Exhibit C-1A) The claimant requested that the Appeals Council Review that decision, and the Appeals Council denied the request for review on February 28, 2012. The claimant did not file a civil suit or request any further review of the Appeals Council's denial.  Therefore, the prior April 15, 2010, decision, which was issued after the claimant's insured status expired on December 31, 2008 (see Exhibit C-3D), became administratively final. The undersigned has considered whether this decision should remain final and finds no reason why it should not. . . Because the doctrine of res judicata applies, the request for hearing dated October 5, 2010, is dismissed with respect to the claimant's Title II claim.

The ALJ then in a second decision issued the same day addressed the merits of Weinus's claim for supplemental security income benefits. Tr. 18-28.

As will be explained in more detail *infra* the ALJ found that Weinus failed to prove that he met the requirements of a listed impairment or suffered from work-preclusive functional limitations. Id.  Instead the ALJ found that Weinus had the ability to perform a limited range of sedentary work[5] and

_____

5.  The term sedentary, light, medium, heavy and very heavy work are defined in the regulations of the Social Security Administration as follows:

> *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.
>
> (c) *Medium work*.  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can do sedentary and light work.
>
> (d) *Heavy work*.  Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If

(continued...)

identified three jobs which Weinus could perform. Tr. 22 and 27.
On August 15, 2012, Weinus filed a request for review with the
Appeals Council and on January 9, 2014,the Appeals Council
concluded that there was no basis upon which to grant Weinus's
request for review. Tr. 1-12. Thus, the ALJ's decision stood as
the final decision of the Commissioner.

   Weinus then filed a complaint in this court on March 10,
2014.  Supporting and opposing briefs were submitted and the
appeal became ripe for disposition on August 18, 2014, when Weinus
elected not to file a reply brief.

   In this case the ALJ dismissed Weinus's request for a hearing
with respect to his claim for disability insurance benefits. A
dismissal by an administrative law judge of a request for a
hearing is not a final decision under §405(g) and is only
reviewable in a very limited circumstance which is not present
here. Bacon v, Sullivan, 969 F.2d 1517, 519-520 (3d Cir. 1992);
Nicosia v. Barnhart, 160 F.Appx. 186, 2005 WL 3477994 (3rd Cir
2005); Lucas v. Astrue, 2011 Wl 5154106 (W.D.Pa. Oct. 21, 2011).

_____

5.  (...continued)
        someone can do heavy work, we determine that he or she
        can also do medium, light, and sedentary work.

        (e) *Very heavy work*. Very heavy work involves lifting
        objects weighing more than 100 pounds at a time with
        frequent lifting or carrying of objects weighing 50
        pounds or more.  If someone can do very heavy work, we
        determine that he or she can also do heavy, medium,
        light and sedentary work.

20 C.F.R. § 404.1567.

A decision dismissing a request for a hearing may be subject to review if the claimant raises a "colorable" constitutional claim. Id. We discern no "colorable" constitutional claim in the present case.  The only matter which is properly before this court for review is Weinus's claim for supplemental security income benefits.[6]

Weinus's alleged disability onset date of December 30, 2007, has no impact on Weinus's application for supplemental security income benefits because supplemental security income is a needs based program and benefits may not be paid for "any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met."  See C.F.R. § 416.501.  As stated above Weinus protectively filed his application on May 27, 2010. Consequently, Weinus is not eligible for SSI benefits for any period prior to June 1, 2010. Furthermore, the relevant time period for reviewing the evidence in the present appeal is April 16, 2010, the day after an ALJ denied Weinus's prior application for disability insurance benefits until June 11, 2012, when the ALJ issued a decision with respect to the SSI application which is the subject of the present appeal.

---

6.  Weinus has not argued that the Commissioner erred in concluding that the prior decision of April 15, 2010, was res judicata or that the decision was not subject to review in this court. Tr. 1-2.

Weinus was born in the United States on April 3, 1966, and at all times relevant to this matter was considered a "younger individual"[7] whose age would not seriously impact his ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). Tr. 97, 138, 145 and 168-169.

Although Weinus withdrew from school during the 9th grade and subsequently did not obtain a General Equivalency Diploma, he can read, write, speak and understand the English language. Tr. 64 and 179-180.  During his elementary and secondary schooling, Weinus attended regular education classes. Tr. 66 and 181.  Weinus did not complete "any type of specialized job training, trade or vocational school." Id.

Weinus's work history, where there are reported earnings, covers 18 years and involves at least 7 different employers. Tr. 153, 162-164 and 171-172.  Weinus reported that he worked as a garbage truck worker, laborer in a manufacturing plant that produced plastic and in construction as a roofer. Tr. 181 and 186-188.  The records of the Social Security Administration reveal that Weinus had earnings in the years 1984 through 1993, 1995 through 1997 and 1999 through 2003. Tr. 153.  Weinus's annual earnings range from a low of $117.00 in 1993 to a high of

_____

7.  The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49."  20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). At the time of the administrative hearing Weinus was 46 years of age. Tr. 44.

$17,422.75 in 1990. <u>Id.</u>  Weinus's total earnings during those 18 years were $134,529.91. <u>Id.</u>

Weinus testified at the administrative hearing that he stopped working as a garbage truck worker in 2003. Tr. 55-71 and 153. He has reported no earnings since 2003. <u>Id.</u>  However, he further testified that he worked periodically on motorcycles and other motor vehicles for friends up through at least 2009. Tr. 48-52 and 60-61.

A vocational expert described Weinus's past relevant employment[8] as unskilled, very heavy work as a garbage truck worker. Tr 72.

## II.   STANDARD OF REVIEW

A trial court has plenary review of all legal issues decided by the Commissioner. <u>Poulos v. Commissioner of Social Security</u>, 474 F.3d 88, 91 (3d Cir. 2007). The trial court's review of any findings of fact, however, is limited to whether those findings are supported by "substantial evidence." <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988).  The substantial evidence standard is highly deferential, and is satisfied with "more than a mere scintilla" of evidence. <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999)(internal citation omitted). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by

---

8.  Past relevant employment in the present case means work performed by Weyant during the 15 years prior to the date his claim for disability was adjudicated by the Commissioner.  20 C.F.R. §§ 404.1560 and 404.1565.

those findings, even if we would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence "does not mean a large or considerable amount of evidence," but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quotation omitted). Substantial evidence exists only "in relationship to all the other evidence in the record," see Cotter v. Harris, 642 F.2d 700. 704 (3d Cir. 1981), and therefore a court reviewing the Commissioner's decision must scrutinize the record as a whole, including whether the Commissioner adequately developed the record. Shaw v. Chater, 21 F.3d 126, 131 (2d Cir. 2000).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or  mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy"

> means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant, first, is engaging in substantial gainful activity; second, has an impairment that is severe or a combination of impairments that is severe; third, has an impairment or combination of impairments that meets or equals the requirements of a listed impairment; fourth, has the residual functional capacity to return to his or her past work; and, if not, fifth, whether he or she can perform other work in the national economy. Id. For the purposes of this determination, residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Titles 11 and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 Fed.Reg. 34475 (July 2, 1996). The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. § 404.1545; see Hartranft v. Apfel,181 F.3d 358, 359 n.1 (noting that residual functional capacity is "defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

12

### III. MEDICAL RECORDS

The medical records reveal that in 2003 Weinus was diagnosed with a herniated disc in the cervical spine which caused severe left foraminal stenosis at the C6-C7 level and mild right-sided nerve root compression at the C3-C4 level. Tr. 229 and 232. On July 14, 2003, Weinus underwent surgery - an anterior discectomy and fusion - to alleviate the pain associated with the cervical disc herniation. Tr. 225.  On February 11, 2004, a treating physician reported that Weinus had "recovered completely." Tr. 224.  On May 9, 2005, an MRI of Weinus's lumbar spine revealed a disc bulge at the L3-L4 level which narrowed the left neural canal and a disc bulge with a central disc protrusion at the L5-S1 level which marginally abutted the S1 nerve roots. Tr. 220.  A treating physician on May 20, 2005, reviewed the MRI and stated that it seemed to reveal "a lateral disc herniation at L3-L4 and degenerative disc and central disc herniation at L5-S1 and L4-L5 being a degenerative disc also." Tr. 221. On May 27, 2008, a treating physician reported that Weinus appeared "chronically ill," had tenderness over the right cervical area with decreased range of motion, and tenderness over the "right [lumbosacral] area to the leg." Tr. 250.  On or about February 17, 2012, Weinus was involved in a head-on motor vehicle accident in which he suffered multiple facial fractures. Tr. 361-366.  A CT scan of Weinus's cervical spine in February of 2012 revealed postoperative and moderate degenerative changes, mild loss of disc space at the C3-

13

C4 and C7-T1 levels,  uncovertebral hypertrophy and posterior disc osteophyte (spur) complex at the C3-C4 level, and right facet arthropathy at the C4-C5 level. Tr. 395.

**IV. DISCUSSION**

The ALJ at step one of the sequential evaluation process found that Weinus had not engaged in any substantial gainful activity since May 27, 2010, the date the application for SSI benefits was filed. Tr. 20.  The ALJ found that Weinus worked after the application date but she gave Weinus the benefit of the doubt and found that the amounts earned did not rise to the level of substantial gainful activity.[9] Id.

At step two of the sequential evaluation process, the ALJ found that Weinus had the following severe impairments: "degenerative disc disease of the lumbar spine; degenerative disc disease of the cervical spine, status-post surgery; and minimally commuted fracture of the left shoulder[.]" Id.

At step three of the sequential evaluation process the ALJ found that Weinus's impairments did not individually or in combination meet or equal a listed impairment. Tr. 22.  In so doing the ALJ reviewed, inter alia, Listing, 1.04, Disorders of

---

9.  Pursuant to Federal Regulations a person's earnings have to rise to a certain level to be considered substantial gainful activity.  The official website of the Social Security Administration reveals that in 2007 the amount was $900 per month ($10800 per year)and periodically increased thereafter. Substantial Gainful Activity, http://www.ssa.gov/oact/ cola/sga.html(Last accessed January 13, 2015).

the Spine, and found that the evidence of record did not document the specific findings required for listing severity. Id.

At step four of the sequential evaluation process the ALJ found that Weinus could not perform his past very heavy work as a garbage truck worker but that he had the residual functional capacity to perform less than the full range of sedentary work. Tr. 22 and 26.  The ALJ found that Weinus requires a sit/stand option at will and he is limited to occupations which require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, and climbing on ramps and stairs; the ALJ found that Weinus has to avoid occupations which require climbing on ladders, ropes and scaffolds and avoid crouching and crawling; he can only occasionally push or pull with his right hand; he can not engage in any prolonged writing or the use of a keyboard; he has to avoid occupations which require overhead reaching, pushing and pulling with the upper extremities; and he must avoid concentrated exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, extreme dampness, and humidity.  Id.

In setting this residual functional capacity, the ALJ considered Weinus's credibility and his activities of daily living and the bare medical records but did not point to any opinion from a treating or examining physician which supported her assessment. In fact the ALJ admitted that the only medical opinions in the record suggested that Weinus was disabled.  On August 11, 2010,

Weinus was examined by J. Chimahosky, D.O., on behalf of the Bureau of Disability Determination. Tr. 295-303.  Dr. Chimahosky after examining Weinus concluded that Weinus can only occasionally carry or lift 2 to 3 pounds; Weinus can only stand and walk for 1 hour or less in an 8-hour workday; he can sit less than 6 hour in an 8-hour workday and can only occasionally engage in postural maneuvers. Id. With respect to Dr. Chimahosky's opinion, the ALJ stated in relevant part as follows: "Dr. Chimahosky's assessment would essentially preclude the claimant from performing any work at a level that is considered gainful employment." Tr. 25.  The ALJ rejected Dr. Chimahosky's opinion but did not point to a contrary medical opinion.  Instead, she engaged in her own lay analysis of the medical evidence.

In addition to the opinion of Dr. Chimahosky, Georgetta D. Lupold, M.D.,  Weinus's treating physician since April 6, 2005, submitted three opinions regarding Weinus's ability to engage in full-time work. Tr. 292, 341-342 and 425.  On February 24, 2010, Dr. Lupold stated in pertinent part as follows:

> Mr. Weinus first came to our office as a patient on 4/6/2005. He apparently sustained an injury about 2 years before. Because of this injury he was unable to work starting 2/14/2003.
>
> He has neck and lower back pain with pain radiating to legs. He has seen several specialists for both areas of complaint and has been unable to find any treatment that has resolved his symptoms.
>
> He has followed the advice of our office and these specialists for testing and therapy.
>
> Because of his chronic pain and stiffness of his back and

16

> neck, he needs to take potent pain medications regularly to
> have the pain reduced to a tolerable level.  He is unable to
> tolerate sitting, standing, or walking for extended periods
> of time.  Activities of daily living completed with a certain
> level of discomfort present.  It appears his condition
> cannot be improved upon and is stable with a definite level
> of restriction of his ability to function.

Tr. 292 and 425.  On May 4, 2011, Dr. Lupold opined based on her

physical examinations of Weinus, review of medical records,

clinical history and diagnostic tests and procedures that Weinus

was permanently disabled. Tr. 341-342.  Finally, on April 18,

2012, Dr. Lupold opined that "[Weinus] continues to be unable to

work" and that he "also sustained serious additional injuries on

2/17/12 during an auto accident." Tr. 425.  The ALJ based on her

lay analysis of the medical evidence rejected Dr. Lupold's

opinion.

Based on the above residual functional capacity and the

testimony of a vocational expert the ALJ found at step five of the

sequential evaluation process that Weinus could perform unskilled,

sedentary work as a video monitor, visual inspector and quote

clerk, and that there were a significant number of such jobs in

the local and national economies. Tr. 27.

Weinus has raised four arguments.  However, we need only

address Weinus's argument that the ALJ did not appropriately

consider the opinions of Dr. Chimahosky and Dr. Lupold.  That

argument has substantial merit.[10]

_____

10.  Weinus's argument that the ALJ erred at step three of the
sequential evaluation process is without merit.  At step two the
(continued...)

The administrative law judge rejected the opinion of Dr. Lupold, the treating physician, as well as Dr. Chimahosky, regarding the physical functional abilities of Weinus which supported Dr. Lupold's opinion.

The preference for the treating physician's opinion has been recognized by the Court of Appeals for the Third Circuit and by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). Even when the treating physician's

---

10. (...continued)
administrative law judge found that Weinus suffered from severe impairments. If Weinus's severe impairments met or equaled a listed impairment, he would have been considered disabled per se and awarded supplemental security income benefits as long as he met the income and asset qualifications. However, a claimant has the burden of proving that his or her severe impairment or impairments meets or equals a listed impairment. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To do this a claimant must show that all of the criteria for a listing are met Id. An impairment that meets only some of the criteria for a listed impairment is not sufficient. Id. The administrative law judge concluded that Weinus did not have an impairment or combination of impairments which meets or equals any of the listed impairments in 20 C.F.R. pt. 404, subpart P, app. 1. The determination of whether a claimant meets or equals a listing is a medical one. The Social Security regulations require that an applicant for disability insurance benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. § 404.1512(c). Consequently, a claimant must present medical evidence or opinion that his or her impairment meets or equals a listing. Weinus has proffered no medical opinion, nor has he marshaled the evidence in the record, to support his contention that his condition met or equaled the requirements of Listing 1.04. No treating or examining physician stated that Weinus's impairments met or equaled the criteria of Listing 1.04. Our review of the medical evidence pertaining to the relevant time period does not reveal evidence supporting a finding that he met Listing 1.04

opinion conflicts with a non-treating, non-examining physician's opinion which is not the case here, the administrative law judge may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason."  Id.  In choosing to reject the evaluation of a treating physician, an administrative law judge may not make speculative inferences from medical reports and may reject treating physician's opinions outright only on the basis of contradictory medical evidence. Id. An administrative law judge may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id.  An administrative law judge may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id.  As one court has stated, "Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong."  Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

In this case the ALJ rejected the opinion of a treating physician as well as a physician who examined Weinus on behalf of the Bureau of Disability Determination and did not point to a contrary assessment by a treating or examining physician or a physician who reviewed Weinus's medical records on behalf of the

Bureau of Disability Determination.  Under the circumstances presented there is a lack of substantial evidence supporting the administrative law judge's residual functional capacity assessment.

We recognize that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding his activities of daily living, medical records, lay evidence and evidence of pain. See Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 121-122 (3d Cir 2000).  However, rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant. See Doak v. Heckler, 790 F.2d 26, 29 (3d Cir.1986)("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence.");  20 C.F.R. § 404.1545(a).  As two commentators have explained:

> Sometimes administrative law judges assert that they -
> and not physicians - have the right to make residual
> functional capacity determinations. In fact, it can
> reasonably be asserted that the ALJ has the right
> to determine whether a claimant can engage in
> sedentary, light, medium, or heavy work.  The ALJ
> should not assume that physicians know the Social
> Security Administration's definitions of those
> terms. Even though the RFC assessment draws from
> medical sources for support, it is ultimately an
> administrative determination based on those
> administrative definitions and is reserved to the

20

Commissioner. <u>However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor.  Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination.</u>  Of course, in such a situation a residual functional capacity determination is merely a mechanical determination, because the regulations clearly and explicitly define the various types of work that can be performed by claimants, based upon their physical capacities. Thus, while agency regulations provide the ultimate issues such as disability and RFC are reserved to the agency, it may not reject a physician's medical findings that determine the various components and requirements of RFC.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 344-345 (2014)(emphasis added); <u>see</u> <u>also</u> <u>Woodford v. Apfel</u>, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000)("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); <u>Zorilla v. Chater</u>, 915 F.Supp. 662, 667 (S.D.N.Y. 1996)("The lay evaluation of an ALJ is not sufficient evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required."). The administrative law judge cannot speculate as to a claimant's residual functional capacity but must have medical evidence, and generally a medical opinion regarding the functional capabilities of the claimant, supporting his determination. <u>Id.</u>

In this case there was no assessment of the functional capabilities of Weinus from a physician which supported the administrative law judge's residual functional capacity assessment and the bare medical records and other non-medical evidence were insufficient for the administrative law judge to conclude that Weinus had the residual functional capacity to engage in a limited range of sedentary work on a full-time basis.[11]

## V.    CONCLUSION

Our review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. If the opinions of Dr. Lupold and Dr. Chimahosky were accepted, Weinus would be considered disabled.

The district court can award benefits only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178 (3d Cir.1986); Tennant v. Schweiker, 682 F.2d 707, 710 (8th Cir.1982).  When faced with such cases, it is unreasonable for the court to give the administrative law judge another opportunity to consider new evidence concerning the

---

11.  The administrative record did contain an RFC assessment from a non-medical state agency adjudicator. Tr. 623-629.  This court has repeatedly stated that reliance on such a statement is inappropriate and the ALJ in this case did not rely on that statement. See, e.g., Ulrich v. Astrue, Civil No. 09-803, slip op. at 17-18 (M.D.Pa. December 9, 2009)(Muir, J.); Demace v. Astrue, Civil No. 11-1960, slip op. at 36-37(M.D.Pa. April 25, 2013)(Munley, J.).

disability because the administrative proceeding would only result in further delay in the receipt of benefits. See <u>Livingston v. Califano</u>, 614 F.2d 342, 345 (3d Cir.1980).  The decision whether to reverse or remand lies within the discretion of the court. <u>See</u>, <u>e.g.</u>, <u>Gilliland</u>, 786 F.2d at 185; <u>Rini v. Harris</u>, 615 F.2d 625, 627 (5th Cir.1980).

In the present case, we find that the record is extensive and well developed.  The record consists of 431 pages and includes the medical records of several doctors who have examined Weinus. Substantial evidence in that record – Dr. Lupold's disability opinion in conjunction with the opinion of Dr. Chimahosky  – indicate that Weinus is disabled and entitled to receive benefits without further extended delay.  Under the circumstances, we see no reason to remand for further consideration of whether Weinus is disabled.

The court has determined, therefore, that the decision of the Commissioner should be reversed and remanded with the direction that SSI benefits be awarded to Weinus if he meets the asset and income requirements,[12] as we find that substantial evidence does not support the decision that Weinus was not disabled under the Act.  The Commissioner will be directed to make a determination as of August 11, 2010, the date Dr. Chimahosky issued a physical

---

12.  As state earlier, SSI is a needs based program and in additional to the requirement that an individual suffer from a disabling impairment, the individual in order to be entitled to SSI has to meet certain income and asset requirements.

functional assessment which limited Weinus to less than full-time sedentary work.

An appropriate order will be entered.




S/ Yvette Kane
Yvette Kane
United States District Judge


Date: February 4, 2015